# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

**In Re:**

MARLIN K. DAYLEY and
JUANITA DAYLEY,

**Debtors.**

**Bankruptcy Case
No. 05-41131**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

>Paula Brown Sinclair, Twin Falls, Idaho, Attorney for Debtors.

>Richard D. Greenwood, Twin Falls, Idaho, Attorney for Wilson Bates.

>L.D. Fitzgerald, Pocatello, Idaho, Chapter 13, Trustee.

Chapter 13 Debtors Marlin and Juanita Dayley seek sanctions against Creditor Wilson Bates based upon an alleged violation of the automatic stay. Debtors ask to recover actual damages for costs and attorneys fees, as well as $58.20 to reimburse Debtors for their travel related to resolving the stay

MEMORANDUM OF DECISION - 1

violation. Debtors also seek unspecified amounts for the emotional distress they allegedly suffered as a result of the stay violation, and $5,000 in punitive damages. An evidentiary hearing was conducted on December 19, 2005, at which testimony and evidence was presented. Thereafter, the parties submitted written closing arguments, Docket Nos. 33, 35 and 36. What follows constitutes the Court's findings, conclusions and disposition of the issues. Fed. R. Bankr. P. 7052; 9014.

## Findings of Fact

The facts are largely undisputed.

Debtors filed for Chapter 13 relief on May 24, 2005. Creditor in due course received written notice of Debtors' bankruptcy filing. Thereafter, Creditor mailed three computer-generated billing statements to Debtors on September 5, October 4, and November 3, 2005. In doing so, Creditor readily admits it violated the § 362(a)[1] automatic stay.

Creditor employs a computer program to track and bill an estimated 4,000 customers each month. Ronald Hash, Creditor's finance manager, testified that when notice of a bankruptcy is received by any of Creditor's stores, that

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101- 1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as promulgated and enacted prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA"), Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005).

MEMORANDUM OF DECISION - 2

notice is promptly forwarded to him so it can be noted in the computer system. At that time, Mr. Hash selects an option in the computer program instructing the system not to send further billing statements to the customer, and notes the fact bankruptcy has been filed on the first page of the customer's physical file. Once noted in the computer program, billing statements will no longer be sent to the customer.

In Debtors' case, because their accounts had been the subject of a small claims court action, the computer system had supposedly already been programmed to not send monthly billing statements to Debtors. Indeed, Debtors had been making small monthly payments on their account before bankruptcy. Mr. Hash could not explain why or how the computer system was instructed to begin sending billing statements to Debtors again. He speculated that because of turnover in his office staff around that time, a mistake had been made.

Creditor was not made aware that the billing statements were being mistakenly sent to Debtors after bankruptcy until it received Debtors' Motion for Sanctions in mid-November.[2] At that time, Debtors' account was reviewed and the computer program corrected to no longer send out billing statements.

---

[2] The Motion for Sanctions indicates Debtors' counsel contacted Creditor's attorney's office on October 7, 2005, to inquire whether Creditor intended to file a proof of claim. Mot. at 2, Docket No. 25. However, it appears the subject of the stay violation was not discussed by the attorneys.

MEMORANDUM OF DECISION - 3

Additionally, Creditor offered Debtors' counsel $200 for the fees they incurred in filing the motion and bringing the matter to Creditors' attention. Debtors rejected this offer.

Debtors assert that receiving the billing statements from Creditor caused them both severe emotional distress. Ms. Dayley suffers from diabetes, and Mr. Dayley testified that stress can cause Ms. Dayley's blood sugar to drop suddenly, thereby creating the risk that she will experience a diabetic shock. This experience in turn causes Mr. Dayley considerable anxiety and distress. Mr. Dayley testified when Debtors received Creditor's billing statements, Ms. Dayley exhibited signs of low blood sugar causing Mr. Dayley distress. On one occasion when Creditor's statement was received, Mr. Dayley witnessed Ms. Dayley become pale and heard her voice change. Although receiving the billing statements created stress for Debtors, no doctor visits were required. After receiving each bill, Mr. Dayley drove 40 miles round-trip to deliver the billing statements to, and to consult with, his attorney.

Debtors argue, and Creditor does not dispute, that Debtors are entitled to recover their reasonable attorneys fees incurred in filing the Motion. But Creditor contends Debtors should not be able to recover reimbursement for travel expenses because Debtors failed to mitigate their damages. Creditor argues

MEMORANDUM OF DECISION - 4

Mr. Dayley could have simply called his attorney to notify her about the billing statements, or better yet, Debtors could have called Creditor directly to remind it they had filed for bankruptcy protection and no further statements should be sent out.

In asking for substantial compensation and punitive damages, Debtors argue that the evidence shows Creditor has no procedure in place to adequately insure consistent compliance with the automatic stay. Therefore, Debtors urge sanctions from the Court are required to motivate Creditor to develop a proper procedure for dealing with bankrupt customers.

### Disposition

**1. Creditor willfully violated the automatic stay.**

Upon the filing of a bankruptcy petition § 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement [of the bankruptcy]." *In re Andrus*, 04.3 I.B.C.R. 137, 140 (Bankr. D. Idaho 2004). Once the creditor has notice of the bankruptcy, "any actions intentionally taken thereafter are 'willful' within the contemplation of § 362(h)." *In re Andrus*, 04.3 I.B.C.R. at 141 (citing *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d. 1210, 1215 (9th Cir. 2002)). No specific intent to violate the stay is required. *Id*.

MEMORANDUM OF DECISION - 5

As discussed above, Creditor admits sending the billing statements to Debtors after learning they had filed for bankruptcy relief. In doing so, Creditor committed a willful violation of the automatic stay.

### 2. Debtors suffered actual damages.

"An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees[.]" 11 U.S.C. § 362(h). The burden is upon Debtors to prove their actual damages. *In re Risner*, 04.4 I.B.C.R. 172, 174 (Bankr. D. Idaho 2004). However, it has been noted that "[w]hen a creditor's conduct is not particularly egregious and the debtor makes no effort to correct the problem before racing into Court, there is no absolute requirement that sanctions be imposed." *Id.* at 175.

Mr. Dayley testified that the stay violation caused him to make three forty mile trips from his home to Twin Falls and back to consult with his attorney about Creditor's activities, and to attend the motion hearing. Creditor's argument that had the matter been dealt with upon receiving the first billing statement in September Debtors would have substantially mitigated their damages is not without merit. The Court must wonder why it took Debtors and their attorney three months to challenge Creditor's conduct, and then why a motion was required, as opposed to a phone call or a letter to Creditor. However, the Court

MEMORANDUM OF DECISION - 6

will not attempt to second-guess as unreasonable Mr. Dayley's perceived need to personally consult his attorney about Debtors' rights and Creditor's conduct. The Court will award Debtors the requested $58.20 as modest reimbursement for Debtors' travel costs incurred as a result of Creditor's collection actions.

Having shown they are entitled to actual damages, Debtors are also entitled to recover their reasonable litigation costs. Debtors offered no proof at the hearing as to the amount of costs and attorney fees they have incurred as a result of Creditors' stay violations. After the evidentiary record closed, Debtors' attorney filed an Amended Disclosure of Attorney Compensation, Docket No. 30, and a Verified Memorandum of Fees, Docket No. 32. Creditor objected to this approach to proof of fees and costs in its closing argument, Docket No. 35, contending it was inappropriate for the Court to consider the fee issue after the evidentiary record had closed and without giving Creditor an opportunity to respond.

While Debtors are entitled to an award of attorneys fees and costs, the Court agrees with Creditor that further proceedings are required. Counsel for Debtors is instructed to schedule the issue for further hearing before the Court, after which the Court will make a determination of the amount of fees and costs to award to Debtors. However, Creditor should be cognizant that the additional

MEMORANDUM OF DECISION - 7

costs incurred by Debtors for such hearing may be included in the final award. Perhaps, to minimize expenses, Creditor should consider resolving this issue by stipulating with Debtors to an appropriate award.

### 3. Debtors are not entitled to damages for emotional distress.

Damages for emotional distress are available when that distress is caused by a willful violation of the automatic stay. *In re Dawson*, 390 F.3d 1139, 1148 (9th Cir. 2004). However, "not every willful violation merits compensation for emotional distress." *Id.* at 1149. In order to recover damages for emotional distress, Debtors must establish that they "(1) suffer[ed] significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Id.* Significant emotional distress may be established by corroborating medical evidence, non-experts such as family members, or it may be "readily apparent even without corroborative evidence." *Id.* at 1149–50.

Mr. Dayley testified that receiving the billing statement from Creditor so upset Ms. Dayley that her blood sugar dropped as it does in response to stress. He testified he saw her complexion and voice change. His wife's condition upset Mr. Dayley to the brink of breaking his sobriety. While the Court

MEMORANDUM OF DECISION - 8

does not doubt receiving the billing statements may cause some distress, the testimony did not establish that either of the Debtors experienced significant emotional distress beyond becoming temporarily upset.  Neither Mr. Dayley nor his wife apparently required any medical attention.  And had the impact on Debtors' health been truly significant, the Court questions why Debtors and their attorney did not bring the fact to Creditor's immediate attention for three months, thereby contributing to the fact that additional bills were sent to Debtors.  Once the problem was brought to Creditor's attention, Creditor corrected the computer glitch and no further statements were sent.

Under these circumstances, the Court concludes no significant emotional distress has been shown beyond that inherent in the bankruptcy process, and no emotional distress damages will be awarded.

### 4.  No grounds for punitive damages exist.

Punitive damages may be awarded if Debtors have proven they suffered actual damages.  *In re Daniels*, 04.4 I.B.C.R. 153, 158 (Bankr. D. Idaho 2004).  However, punitive damages may only be recovered in "appropriate circumstances."  11 U.S.C. § 362(h).  "Such circumstances exists when there has been a 'reckless or callous disregard for the law or rights of others.'" *In re Daniels*, 04.4 I.B.C.R. at 158.

MEMORANDUM OF DECISION - 9

Debtors argue punitive damages are appropriate because Creditor has no policy or procedure in place to ensure compliance with the automatic stay. However, the Court disagrees. To the contrary, it appears Creditor maintains a system that, when it functions correctly, adequately responds to bankruptcy filings. Instead, the Court finds that human error, not a system failure, accounted for the offensive statements being sent to Debtors, something that was promptly addressed when Creditor was finally notified of its error. There is no basis here to conclude Creditor is guilty of "reckless or callous disregard" for the automatic stay or the Debtors' rights, and no punitive damages will be awarded.

## Conclusion

Creditor willfully violated the automatic stay by sending the three billing statements to Debtors after knowing they had filed for bankruptcy relief. Debtors may recover actual damages in the amount of $58.20 as reimbursement for travel expenses incurred to correct the violation. In addition, Debtors may recover their attorneys fees and costs for prosecuting the Motion. If the parties cannot agree upon a reasonable amount, the issue must be the subject of a further hearing. Debtors did not satisfy their burden to prove they suffered the sort of significant emotional distress to justify a further award of damages, and no punitive damages will be awarded under these facts.

MEMORANDUM OF DECISION - 10

The parties may submit an approved order resolving the issues. If they cannot agree on an appropriate amount for Debtors' attorney's fees and costs, counsel for Debtors should schedule the case for further hearing.

Dated: March 9, 2006

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 11